UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUIS NEGRON,

                    Plaintiff,

v.                                    Case No. 3:08-cv-1118-J-34MCR

RANDALL BRYANT, et al.,

                    Defendants.

_____

**<u>ORDER</u>**[1]

**<u>I. Status</u>**

Plaintiff Luis Negron, an inmate of the Florida penal system proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, initiated this action by filing a Civil Rights Complaint Form (Complaint) (Doc. #1) under 42 U.S.C. § 1983 on November 5, 2008, in accordance with the mailbox rule. In support of the Complaint, Plaintiff has submitted exhibits (P. Ex.). Plaintiff names the following individuals as Defendants in this action: (1) Randall Bryant, the Warden of Florida State Prison (FSP); (2) Thomas Williams, a correctional officer at FSP; (3) Jason E. Young, a sergeant at FSP; (4) Dr. Muhammad Akhtar, a physician; and (5) Terri Walters, a nurse. Plaintiff makes the following claims: Defendant Young physically assaulted him; Defendant Williams failed to intervene and prevent

_____

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

the assault; Defendants Young, Williams and Walters conspired to cover up the alleged assault by "conforming" the disciplinary reports and the post use of force medical records and by fabricating the disciplinary reports and falsifying the medical records; Defendants Young and Williams retaliated against Plaintiff for his filing of an informal grievance; Defendant Bryant failed to discipline the officers to curb the known pattern of physical abuse despite Plaintiff's grievance prior to the alleged assault; Defendant Bryant also failed to ensure that Plaintiff received the appropriate medical attention; and Defendants Walters and Akhtar were deliberately indifferent to Plaintiff's serious medical needs and committed medical malpractice. <u>See</u> Complaint at 9-10.

This cause is before the Court on Defendants Bryant, Akhtar and Williams' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Summary Judgment Motion) (Doc. #23) with exhibits (Def. Ex.) and Defendant Walters' Response and Notice of Adoption and Incorporation of the Motion to Dismiss or in the Alternative Motion for Summary Judgment (Walters' Notice of Adoption) (Doc. #34) with her affidavit (Walters' Ex. A). Since Plaintiff is appearing <u>pro</u> <u>se</u>, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond to the motion. <u>See</u> Order of Special Appointment; Service of Process Upon Defendants; Notice to Plaintiff (Doc. #7) (setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure),

filed December 8, 2008. On August 24, 2009, Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment (Plaintiff's Brief) (Doc. #26) with exhibits (P. SJ Ex.); a Declaration in Opposition to Defendants' Motion for Summary Judgment (Plaintiff's Declaration) (Doc. #27); and a Statement of Disputed Factual Issues (Doc. #28). In response to Defendant Walters' Notice of Adoption, Plaintiff filed a Notice of Adoption and Incorporation of the Brief in Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Plaintiff's Notice of Adoption) (Doc. #37). This case is now ripe for review.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its
> burden, the non-moving party must then 'go
> beyond the pleadings,' and by its own
> affidavits, or by 'depositions, answers to
> interrogatories, and admissions on file,'
> designate specific facts showing that there is
> a genuine issue for trial." <u>Jeffery v.
> Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94
> (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at
> 324, 106 S.Ct. 2548).[2]

<u>Id</u>. at 1314; <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324

(1986) ("Rule 56(e) permits a proper summary judgment motion to be

opposed by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings themselves").

### III. Plaintiff's Allegations and Claims

On April 14, 2008, in the presence of Defendants Young and

Williams, Officer Osteen[3] threatened Plaintiff with physical harm,

did not feed Plaintiff and promised that Plaintiff would never

leave FSP. <u>See</u> Complaint at 11. Plaintiff submitted an informal

grievance to Defendant Bryant on April 15, 2008, in which he

complained about threats made by Officer Osteen in the presence of

Defendants Young and Williams. <u>Id</u>.; P. Ex. A, Informal Grievance,

dated April 14, 2008. The Florida Department of Corrections denied

the Plaintiff's April 14, 2008 informal grievance on April 21,

2008. <u>Id</u>.

---

[2] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

[3] The record reflects that the correct spelling is "Osteen."
<u>See</u> P. Ex. A.

As of April 17, 2008, due to "good adjustment," Plaintiff was released from close management to open population and was awaiting a transfer.  <u>See</u> Complaint at 11.  On May 1, 2008, Plaintiff reported to the day room on I wing for work.  <u>Id</u>.  Complying with Defendant Young's order, Plaintiff went to the back day room for a shave.  <u>Id</u>.  After Plaintiff's shave, Defendant Williams ordered Plaintiff to sit and wait in the day room.  <u>Id</u>.  While Defendant Williams stood in the doorway to the day room, Defendant Young entered the day room and ordered Plaintiff to turn around for handcuffing; Plaintiff complied.  <u>Id</u>. at 12.  As Plaintiff turned to submit to the handcuffing, Defendant Young punched and kicked Plaintiff across his head, shoulders, ribs, back and legs, slammed Plaintiff's head into the wall and yelled "write this up" and "you think you got away."  <u>Id</u>.  Plaintiff lost consciousness.  <u>Id</u>.  When Plaintiff, whose hands were cuffed behind his back, regained consciousness on the floor, Defendant Young's knee was in Plaintiff's lower back as he punched Plaintiff's head and ribs "to the accompaniment of Defendant Williams cheering on Defendant Young . . . and laughing."  <u>Id</u>.

Then, under the observation of the use of force camera, Plaintiff was placed in waist chains and shackles and handcuffed with a black box connected to the waist chains behind his body.  <u>Id</u>.  Restrained, Plaintiff was escorted to Defendant Walters for a post use of force examination.  <u>Id</u>.  Plaintiff suffered the

following injuries:  severe rib pain, dizziness and a "grotesquely swollen" face (right side) and forehead.  Id. at 13.  Walters took Plaintiff's pulse and blood pressure, visually inspected Plaintiff for injuries and told Plaintiff if the pain continued he could request sick call.  Id.  Thereafter, Plaintiff was placed in disciplinary confinement.  Id.

On May 2, 2008, Plaintiff submitted an emergency grievance concerning physical abuse, retaliation for filing a grievance, inadequate medical care and denial of the evening meal.  P. Ex. B. On that same day, Jones (in the mental health department) met with Plaintiff about the use of force and advised Plaintiff to become the "invisible man."  Complaint at 13.

Defendants Williams and Young wrote two disciplinary reports on May 2, 2008, for Plaintiff's lewd and lascivious exhibition (for masturbating in the television room) and for disobeying a verbal order (for refusing to submit to handcuffs, which caused the need for force to be used).  Id. at 14; P. Exs. D; E.  On May 23, 2008, Plaintiff was placed back on close management II status due to the two disciplinary reports written by Defendants Young and Williams. Complaint at 15; P. Ex. F. Both disciplinary reports were later overturned for technical reasons.  P. Exs. D; E.

Plaintiff's requests for medical attention on May 2nd, May 3rd and May 4th (due to severe pain in his ribs and nausea and dizziness) were denied.  Complaint at 14.  When most of Plaintiff's

facial swelling had subsided, Plaintiff was finally given a sick
call form on Monday, May 5th. Id. On May 6th, Plaintiff submitted
the sick call form that he had received on May 5th. Id.; P. Ex. H.
A "different nurse," on May 7, 2008, "visually inspected" Plaintiff
through his cell window and gave him pain pills and placed an order
for Plaintiff to see Defendant Akhtar. Complaint at 14.

On May 9, 2008, the Department found Plaintiff guilty of both
disciplinary reports without any evidence against him and sentenced
him to ninety days of disciplinary confinement and loss of
visitation privileges for one year. Id.; P. Exs. D; E. That same
day, Defendant Akhtar "visually inspected" Plaintiff and concluded
that he did not think the ribs were broken, but were "maybe cracked
or possibly just muscle damage." Complaint at 15. On May 15th,
Plaintiff submitted a medical grievance, complaining that he had
not received his x-rays or any pain medication as prescribed by
Defendant Akhtar. Id.; P. Ex. H. The Department approved the
medical grievance on June 4th, stating: "Review of your medical
record indicates Dr. Akhtar wrote an order on May 9, 2008, as that
was when you were seen. There is no medication administration
record showing you received any of the 600mg ibupro[f]en and I have
instituted a correction to this." Complaint at 16; P. Ex. H.

Plaintiff submitted a sick call request on July 8th due to his
suffering continuous rib pain and a medical grievance on July 10th
due to the continued lack of medical treatment. Id. On July 24th,

Defendant Akhtar denied Plaintiff's medical grievance.  P. Ex. H.
Plaintiff appealed the denial on July 31st, and the appeal was
denied on September 2, 2008.  Complaint at 17; P. Ex. H.

### IV. Law and Conclusions

### A. Defendant Young

Plaintiff claims that Defendant Jason E. Young physically
assaulted him on May 1, 2008, that Young conspired with Defendants
Williams and Walters to cover up the alleged assault by
"conforming" the disciplinary reports and the post use of force
medical report, that Young fabricated a disciplinary report for
disobeying an order and that he retaliated against Plaintiff for
Plaintiff's filing of grievances.

Since Plaintiff is proceeding <u>in</u> <u>forma</u> <u>pauperis</u> in this
action, this Court initially directed service of process upon
Defendant Young on December 8, 2008, <u>see</u> Order of Special
Appointment; Service of Process Upon Defendants; Notice to
Plaintiff (Doc. #7); however, service of process was returned
unexecuted.  <u>See</u> Unexecuted Return of Service (Doc. #8) (noting
that Defendant Young is assigned to Lawtey Correctional
Institution).  Therefore, this Court, on October 5, 2009,
redirected service of process upon Defendant Young.  <u>See</u> Order
Redirecting Service of Process (Doc. #29).  When a return of
service was not returned, this Court again redirected service of
process upon Defendant Young.  <u>See</u> Order Redirecting Service of

Process Upon Defendant Jason E. Young (Doc. #38). On February 4, 2010, a return of service for Defendant Young was filed, reflecting that Defendant Young had been served with the Complaint and exhibits on October 14, 2009. Additionally, on February 4, 2010, a return of service was filed, noting that the service of process attempted on January 25, 2010, was unexecuted due to Young's "extended military leave."

Since Defendant Young has not responded to the Complaint, Plaintiff's claims against him remain pending. However, the Court notes that Defendant Young is on "extended military leave." Thus, it may be appropriate for this Court to stay this case as to Defendant Young until he returns from military leave. Defendants' counsel will be ordered to address whether a stay of this case is appropriate at this time. See Servicemembers Civil Relief Act, 50 App. U.S.C.A. § 522(b).

## B. Failure to Intervene

Plaintiff contends that Defendant Williams violated his Eighth Amendment right to be free from cruel and unusual punishment on May 1, 2008, when he failed to intervene in the alleged assault upon Plaintiff by Defendant Young. This Court finds that Defendant Williams has met his initial burden of showing this Court, by reference to his affidavit (Def. Ex. C), the disciplinary reports (Def. Exs. E; F) and Plaintiff's medical records (Def. Ex. K), that there are no genuine issues of material fact that must be decided

at trial.  Defendant Williams, in his affidavit, states that, when he saw Negron masturbating in the day room on May 1, 2008, he notified Defendant Young, the housing supervisor.  Def. Ex. C. Williams asserts that he heard Defendant Young order Negron to submit to handcuffing procedures, heard commotion and then observed Defendant Young on the floor with Negron.  Id.  Williams avers that he saw Defendant Young escort Negron out of the day room in hand restraints, but did not see Young use any more force than was necessary during the escort.  Id.  Williams states he did not see Defendant Young hit, strike, punch or kick Negron at any time.  Id.

Because Defendant Williams met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial.  In addition to the sworn allegations contained within his Complaint, Plaintiff has filed an opposition brief with exhibits and a sworn declaration. See  Plaintiff's Brief at 20-23; Plaintiff's Declaration at 3.  In response to the Summary Judgment Motion, Plaintiff states that Defendant Young, in the presence of Defendant Williams, ordered Plaintiff to turn around and submit to the handcuffing procedures; Plaintiff complied and turned around to face the wall for submission to the handcuffing procedures.  Plaintiff's Declaration at 3.  Plaintiff describes the force used by Defendant Young after

Plaintiff had allegedly complied with the order to submit to the handcuffing:

> [P]unches and kicks started to rain down on the plaintiff as defendant Young yelled "Write this up" and "so you think you got away!" The plaintiff's head struck the wall due to the force of the malicious attack. He lost consciousness only to awake on the floor, handcuffed behind his back with defendant Young's knee in his lower back as he continually and maliciously struck the plaintiff in the head, ribs and back **to the laughter of defendant Williams who was still in the doorway.**

Id. (emphasis added). Citing the Incident Report, see P. SJ Ex. P, Plaintiff argues that Defendant Williams was present, witnessed the use of force upon Plaintiff by Defendant Young and failed to intervene to prevent the "malicious and sadistic attack . . . ." Plaintiff's Brief at 22; Plaintiff's Declaration at 3.

In reviewing a motion for summary judgment, "[i]f there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Allen v. Board of Public Educ. for Bibb County, 495 F.3d at 1314 (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003)). "[B]ecause liability can be imposed upon prison guards who are present at the scene and who are in a position to intervene but fail to take reasonable steps to stop excessive force by other guards," see Clark v. Argutto, 221 Fed Appx. 819, 826 (11th Cir. 2007) (not selected for publication in the Federal Reporter), and

since Negron's failure to intervene claim is closely interwoven with his excessive use of force claim against Young, the Summary Judgment Motion will be denied with respect to the failure to intervene claim. At this time, there are genuine issues of material fact that prevent the entry of summary judgment with respect to Plaintiff's Eighth Amendment claim for Williams' failure to intervene to prevent the alleged excessive use of force.

### C. Conspiracy

Plaintiff contends that Defendants Young, Williams and Walters conspired to cover up the May 1, 2008 alleged assault by fabricating and conforming the disciplinary reports and the post use of force medical records. Defendant Walters claims that Negron failed to exhaust any claim of alleged conspiracy or collusion between Defendant Walters and any other person, <u>see</u> Walters' Notice of Adoption at 3, and Plaintiff now concedes that he failed to exhaust the available administrative remedies with respect to the conspiracy claim against Defendant Walters "because of [his] ignorance in what all needed to be specified," <u>see</u> Plaintiff's Notice of Adoption at 2.

The Prison Litigation Reform Act (PLRA) amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e to read as follows:

> (a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United

States (42 U.S.C. 1983), or any other Federal
law, by a prisoner confined in any jail,
prison, or other correctional facility until
such administrative remedies as are available
are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion of available administrative remedies is "a
precondition to an adjudication on the merits" and is mandatory
under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.
2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo,
548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the
discretion of the district court, but is mandatory.") (citation
omitted). Furthermore, "the exhaustion requirement cannot be
waived based upon the prisoner's belief that pursuing
administrative procedures would be futile." Higginbottom v.
Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (citing
Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998)). Here,
Plaintiff failed to exhaust his claims that Walters conformed and
falsified medical records to cover up the alleged excessive use of
force. Therefore, such claims against Defendant Walters are due to
be dismissed pursuant to 42 U.S.C. § 1997e(a).

Further, even assuming proper exhaustion, Defendants Walters
and Williams contend that the Complaint "is devoid of any
substantive allegation of an agreement or communication" among
Walters, Williams and anyone else regarding the fabrication of
disciplinary reports and the falsifying of medical records and the

conforming of such documents to cover up the assault.  See Walters'

Notice of Adoption at 4; Summary Judgment Motion at 13.

> Conspiring to violate another person's
> constitutional rights violates section 1983.
> Dennis v. Sparks, 449 U.S. 24, 27 101 S.Ct.
> 183, 186 (1980); Strength v. Hubert, 854 F.2d
> 421, 425 (11th Cir. 1988), overruled in part
> on other grounds by Whiting v. Traylor, 85
> F.3d 581, 584 n.4 (11th Cir. 1996).   To
> establish a prima facie case of section 1983
> conspiracy, a plaintiff must show, among other
> things, that the defendants "reached an
> understanding to violate [his] rights."
> Strength, 854 F.2d at 425 (quotation omitted).
> The plaintiff does not have to produce a
> "smoking gun" to establish the "understanding"
> or "willful participation" required to show a
> conspiracy, Bendiburg v. Dempsey, 909 F.2d
> 463, 469 (11th Cir. 1990), but must show some
> evidence of agreement between the defendants.
> Bailey v. Bd. of County Comm'rs of Alachua
> County, 956 F.2d 1112, 1122 (11th Cir. 1992)
> ("The linchpin for conspiracy is agreement,
> which presupposes communication.").   For a
> conspiracy claim to survive a motion for
> summary judgment "[a] mere 'scintilla' of
> evidence . . . will not suffice; there must be
> enough of a showing that the jury could
> reasonably find for that party."  Walker v.
> Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-84 (11th Cir.

2002).

Defendant Williams denies that he conspired with Defendant

Young to cover up the assault.  See Def. Ex. C.  Further, Defendant

Walters' May 1, 2008 medical assessment notations of Negron's rib

pain and abrasions to the right side of his head from a use of

force incident, see Def. Ex. K-K1, and her May 29, 2008

documentation of "alleged staff abuse" with a detailed description

of the occurrence as told by Plaintiff ("when they pulled all the other I/Ms to go to work they told me to go to [the] TV room and cuff up and they came in and beat me and threw me in the shower."), see Def. Ex. K5, are inconsistent with any allegation of conspiracy to cover up the alleged assault or to falsify or conform medical records. In her affidavit, she avers that she did not falsify or conform any medical documents for any reason and accurately recorded the results of her physical examinations of Negron, "with no incentive or motive other than to provide proper medical care to him." Walters' Ex. A.

In response to the Summary Judgment Motion, Plaintiff states that his exhibit B shows an agreement or communication among Defendant Williams, Defendant Young and Officer Osteen by the threats made to Negron that he would never leave FSP as long as they worked there. See P. SJ Ex. B, Informal Grievance, dated April 14, 2008. In that grievance, Plaintiff states that Officer Osteen told Negron that he had disrespected him and that "I will never see the compound as long as he works [at FSP]." Id. Plaintiff claims that Officer Osteen made the threat in front of Defendants Williams and Young. With respect to Defendant Walters, Plaintiff concedes that a claim of conspiracy against Walters is unfounded. See Plaintiff's Notice of Adoption at 5. Since there is no evidence of an agreement by Defendants Walters and Williams to violate Plaintiff's constitutional rights, Defendants' Summary

Judgment Motion will be granted as to the conspiracy claims against Defendants Walters and Williams.

## D. Retaliation

Plaintiff Negron also contends that Defendants Young and Williams retaliated against him for his filing of the April 14, 2008 informal grievance, in which Plaintiff had alleged that Officer Osteen, in the presence of Young and Williams, threatened Negron with bodily harm and warned Negron that he would never see the compound as long as Osteen works at FSP. See Complaint at 11. First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment. Moulds v. Bullard, No. 08-10706, 2009 WL 2488182, *4 (11th Cir. Aug. 17, 2009) (quotations and citation omitted) (not selected for publication in the Federal Reporter).

> "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). [Plaintiff's] complaint must contain enough facts to state a claim of retaliation by prison officials that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

<u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008). "To establish a claim for retaliation, the inmate must show a causal connection between his protected conduct and the prison official's action. <u>See</u> <u>Smith v. Sec'y, Fla. Dep't of Corr.</u>, No. 09-11423, 2009 WL 4893301, *1 (11th Cir. Dec. 21, 2009) (citing <u>Farrow</u>, 320 F.3d 1248-49) (not selected for publication in the Federal Reporter).

Defendants acknowledge that writing grievances is constitutionally protected speech under the First Amendment. <u>See</u> Summary Judgment Motion at 14. Defendant Williams contends that "Negron appears to allege that the April 14, 2008 informal grievance (Plaintiff's Exhibit A) was a precipitating factor in the use of force[;] [h]owever that grievance alleged threats by an unnamed officer, not Officer Williams or Sergeant Young." <u>Id</u>. at 15. Defendant concludes that "[n]o causal link is established between this grievance and any adverse action by Defendants." <u>Id</u>.

In response to Defendant Williams' contentions in the Summary Judgment Motion, Plaintiff states that Defendant Young, as he was beating Plaintiff, yelled, "write this up," and "you think you got away," <u>see</u> Plaintiff's Declaration at 3; Plaintiff's Brief at 19, 23-24, which is consistent with Negron's allegations in the Complaint, <u>see</u> Complaint at 12. Since Plaintiff has come forward with evidence of a causal connection between Young's alleged actions and Negron's filing of grievances and since the retaliation

claim against Defendants Williams is intertwined with the excessive use of force and failure to intervene claims, the Summary Judgment Motion will be denied with respect to the retaliation claim against Defendant Williams.

### E. Eleventh Amendment

Insofar as Plaintiff sues the Defendants in their official capacities,[4] Defendants contend that they are entitled to Eleventh Amendment immunity. "It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." Manders v. Lee, 285 F.3d 983, 990 (11th Cir. 2002) (citations omitted).

In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id. Thus, insofar as Plaintiff seeks monetary

---

[4] See Complaint at 1, 18-19; Plaintiff's Brief at 1-2.

damages from Defendants in their official capacities, the Eleventh Amendment bars suit.

## F. Randall Bryant

Plaintiff alleges that Defendant Bryant failed to discipline the officers to curb the known pattern of physical abuse despite Plaintiff's grievance prior to the alleged assault and that Bryant failed to ensure that Plaintiff received appropriate medical attention following the assault. In response, Defendant Bryant first contends that Plaintiff failed to exhaust his administrative remedies with respect to the claims against Defendant Bryant. See Summary Judgment Motion at 9-10. Specifically, Defendant Bryant asserts that the grievances submitted by Plaintiff "do not reflect that Negron ma[d]e any specific claim against the Warden that his actions were deficient in not disciplining [the] officers or ensuring medical attention." Id. at 9.

Plaintiff disagrees, arguing that he exhausted the claim concerning Defendant Bryant through the Department's administrative grievance process by submitting a Request for Administrative Remedy or Appeal, dated May 5, 2008 (P. Ex. B, Grievance Log # 08-6-12804). See Plaintiff's Brief at 12-14. However, upon review of the grievance, it is evident that it addresses claims concerning Defendant Young, Defendant Williams and Officer Osteen, not claims involving Warden Randall Bryant. Thus, since Plaintiff has failed to exhaust these claims concerning Defendant Bryant through the

Department's administrative grievance procedures and is required to have grieved the issues he raises in the Complaint, these claims against Defendant Bryant must be dismissed pursuant to 42 U.S.C. § 1997e(a).

Even assuming Plaintiff Negron had properly exhausted his medical claim against Defendant Bryant, Negron's claim would be due to be dismissed. Defendant Bryant argues that he has no section 1983 liability with respect to Negron's medical deliberate indifference claim because Bryant defers to the Chief Health Officer, and thus, no causal connection exists between the Warden and any medical decisions by the medical department. <u>See</u> Summary Judgment Motion at 11. In response, Plaintiff states that the claim against Defendant Bryant for medical deliberate indifference "was an error due to Negron's lack of knowledge concerning the liability of the Chief health officer and not the Warden in grievances of a medical nature" and therefore the claim against Defendant Bryant must be dismissed. Plaintiff's Brief at 16. Thus, the Summary Judgment Motion will be granted as to the medical claim against Defendant Bryant.

Finally, assuming proper exhaustion, Plaintiff's claim concerning Bryant's failure to discipline the officers (to curb the known pattern of physical abuse despite Plaintiff's April 14, 2008 grievance prior to the May 1, 2008 assault) is due to be dismissed. Defendant Bryant contends that Plaintiff fails to state a valid

constitutional claim.  <u>See</u> Summary Judgment Motion at 10.  In response, Plaintiff asserts that his claim is based on "Bryant's grievance responses, knowledge of a serious risk of harm to Negron and Warden Bryant's failure to curb the known propensity for violence that is prevalent in officers working for him at Florida State Prison."  Plaintiff's Brief at 14.

The record reflects the following pertinent facts.  Negron submitted an informal grievance to Defendant Bryant on or about April 14, 2008, in which Negron complained about the April 14, 2008 threats made by Officer Osteen in the presence of Defendants Young and Williams.  <u>See</u> P. Ex. A, Informal Grievance to Warden, dated April 14, 2008.  In the grievance, Plaintiff requested an immediate investigation and proper corrective and disciplinary action.  <u>Id</u>. The Department, in response to the grievance, investigated the incident by interviewing Officer Osteen on April 21, 2008, and then responded to Plaintiff that Osteen had denied Plaintiff's allegations, stating that he had not denied Negron his meal and that Negron was ordered to get his items to return to I wing.  <u>Id</u>.

Plaintiff Negron bases his claim against Defendant Bryant on the fact that Negron notified Bryant of the April 14, 2008 incident involving Officer Osteen in the presence of Defendants Young and Williams.  The United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under
> section 1983 on the basis of respondeat

superior or vicarious liability." <u>Belcher v. City of Foley, Ala.</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." <u>Gonzalez</u>, 325 F.3d at 1234 (internal quotation marks and citation omitted).[5] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" <u>Cottone</u>, 326 F.3d at 1360 (citation omitted).[6] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," <u>Gonzalez</u>, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008). The supervisory claims against Defendant Bryant fail since the record

---

[5] <u>Gonzalez v. Reno</u>, 325 F.3d 1228 (11th Cir. 2003).

[6] <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003).

shows that he did not personally participate in the alleged constitutional violations. Further, Plaintiff has identified no facts to create a genuine issue for trial as to the presence of a causal connection between his actions or inactions and the alleged constitutional deprivations. The Summary Judgment Motion will be granted as to claims made against Defendant Randall Bryant.

## G. Eighth Amendment Claims of Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that Defendants Walters and Akhtar were deliberately indifferent to his serious medical needs, were negligent and committed medical malpractice. Specifically, Plaintiff asserts that the Defendants denied him proper medical care for the injuries he sustained in the use of force incident on May 1, 2008. However, the record reflects that the Defendants were not deliberately indifferent to Plaintiff's serious medical needs.

Defendant Walters, a Senior Licensed Practical Nurse, submitted an affidavit, which outlines the medical care provided to Plaintiff Negron after the May 1, 2008 use of force incident. She states that she read Negron's Complaint and is aware of the claims Negron alleges against her. See Walters' Ex. A. In recalling the medical attention she provided to Negron after the use of force incident, she asserts that she was not deliberately indifferent or negligent as to Negron's medical needs. Id. Walters further notes that she did not falsify any medical documents for any reason and accurately recorded the results of her examinations of Negron "with

no incentive or motive other than to provide proper medical care to him." Id.

She avers that she provided the following medical care to Negron after the alleged assault:

> On May 1, 2008, I medically examined Negron following a reported spontaneous use of force. I noted him to be alert and oriented and responding verbally to questions. If he had exhibited signs of a concussion or being unconscious, I would have documented that observation. I noted that he was in no acute distress and that he had a small abrasion to the right side of his head and that he complained of rib pain. If there had been any bleeding or other objective indications of injury, I would have noted this in the Emergency Room record. If Negron's face and forehead had been "grotesquely swollen" as stated in the complaint, I would have documented that observation. If Negron had exhibited any objective manifestation of rib or side injury, I would have noted such in the Emergency Room record. In my medical opinion, his injury was very minor and did not necessitate physician notification or require any further treatment. My medical documentation and conclusions were based on no reasons other than my examination and my medical experience and knowledge. I did advise Negron to access sick call if needed.
>
> I again examined Negron on May 29, 2008. I documented the results of my examination in the Emergency Room Record. I noted Negron's claims of being subjected to physical force on May 1, 2008. I took his vital signs and noted that he was alert and oriented and in no apparent distress. I noted no injuries, no abrasions or any abnormalities. If Negron had exhibited any injury I would have documented such in the Emergency Room record. In my medical opinion and based on my medical experience and knowledge, the absence of any objective manifestation of injury did not

- 24 -

necessitate physician notification or require any further treatment. I did advise Negron that he could access sick call if needed.

I did not fail to adequately examine Negron on the emergency basis in which he was examined. I did not delay or impede his access to medical care. He was advised of sick call if needed. I did not "conform" or "falsify" any medical report or record for any reason. All of my medical documentation was based on my objective examinations of Negron and not based on any other reason or influence.

Id. (paragraph enumeration omitted).

Additionally, the record reflects that Defendant Akhtar, the Chief Health Officer at FSP, examined Negron after the May 1, 2008 use of force incident. Def. Ex. I, Akhtar's Affidavit. Akhtar states that he read Negron's Complaint and is aware of the claims made by Negron. Id. In recalling the medical attention he provided to Negron on May 9, 2008, he asserts that he was not deliberately indifferent or negligent as to Negron's medical needs. Id. Akhtar avers that he provided the following medical care to Negron after the alleged assault:

On May 9, 200[8], I medically examined Mr. Negron. He stated that the right side of his ribs hurt and he complained of dizziness.

My examination of his head, eyes, ears, nose and throat was unremarkable. His pupils were equal and reactive to light. His cardio pulmonary functions were non-contributory and unremarkable. Mr. Negron expressed discomfort on palpation of the right rib cage area in the front and back, but demonstrated no specific tenderness or localized swelling. His abdomen felt soft and his neurological functions

reflected he was alert and oriented to person, place and time. I noted his blood pressure was on the low side and advised him to increase his water intake. I prescribed Mr. Negron 600 milligrams Ibuprofen (#30) for any pain he might have and advised him to gradually exercise. I detected no bruising or other indications of injury other than his subjective expression of discomfort upon palpation. In my medical opinion and based on my examination, I did not feel that x-rays were warranted. I further determined that no follow up was needed at this time and advised him to access sick call as needed.

My order for Ibuprofen was documented in the medical file and presented to the pharmacy as noted by the nurse at 3:00 p.m.[7] When it came to my attention through the formal grievance process that Mr. Negron alleged he had not received his medication, it was discovered that there was no medication administration report (MARS) in the file. MARS is used to document each single dose of medication provided to an inmate.[8] Prescription for Ibuprofen 600 milligram[s] one time PO [(by mouth)] TID [(three times a day)] was filled.

In my medical opinion, Mr. Negron did not have any serious injury. If I believed he had, I would have scheduled him for a follow-up or referred him for other treatment. From my overall examination of Mr. Negron, he did not exhibit symptoms that would tend to reflect any injury other than his subjective complaint of discomfort.

Id. (paragraph enumeration omitted).

Defendants have also submitted the relevant portions of Plaintiff's medical records and an Affidavit from Dr. Frank

---

[7] See Def. Ex. K3.

[8] See Def. Ex. K7-K8.

Johanson, M.D., Assistant Deputy Director of the Florida Department

of Corrections' Office of Health Services, in which he evaluates

and interprets these records.  In his Affidavit, he states:

> On May 1, 2008, Negron was provided a
> post use of force examination.  He was noted
> to be alert and oriented and responding
> verbally to questions.  Negron was noted to be
> in no apparent distress and to have a small
> abrasion to the right side of his head.  He
> was advised to follow up with sick call as
> needed.[9]

> Negron was again medically examined on
> May 9, 2008 by Chief Health Officer Dr.
> Akhtar.  Negron stated the right side rib area
> hurt and complained of dizziness.  The
> examination of Negron's head, eyes[,] ears[,]
> nose and throat was unremarkable. Negron's
> pupils were equal and reactive to light which
> is contraindicative of any serious head
> injury.  His cardio pulmonary functions were
> non-contributory and unremarkable. His
> abdomen felt soft and his neurological functions
> reflected he was alert and oriented to person,
> place and time.  The record reflects that
> Negron expressed discomfort on palpation of
> the right rib cage area in the front and back.
> Dr. Akhtar noted that Negron had no localized
> swelling and had no apparent injuries.  Negron
> was prescribed 600 milligrams Ibuprofen (#30)
> for any pain he might have, and advised to
> gradually exercise. No followup was determined
> necessary by Dr. Akhtar and he was advised to
> access sick call as needed.

> The medical record reflects that Dr.
> Akhtar's order for Ibuprofen was documented in
> the medical file and presented to the pharmacy
> as noted by the nurse at 3:00 p.m.  The
> medical record reflects that when it came to

---

[9] Negron asserts that "a different nurse" visually inspected
him on May 7, 2008, gave him pain pills and "put in an order for
[him] to see" Dr. Akhtar.  Complaint at 14.

Dr. Akhtar's attention that no record existed in the medical file for medication administration, it was corrected and Negron began receiving his medication.

Negron was again examined on May 29, 2008. He was again noted to be ambulatory, alert and oriented and responding verbally to questions. He was noted to be in no apparent distress and had no abrasions and no abnormalities. No injuries were noted.

On July 9, 2008, Negron was assessed by medical staff with a complaint of right mid flank abdomen pain. He expressed no symptoms that would indicate any medical problem other than a claim of an ache. Upon palpation of the area, no indication of pain was evident. He was advised to access Tylenol on the wing, if needed. He was also advised to return to medical if the symptoms continued and was provided information related to the benefits of moderate exercise.

On September 9, 2008, Negron was afforded but refused a medical callout relevant to the post use of force of May 1, 2008, stating he had already been seen.

That same month, Negron was assessed for the Restricted Labor Squad and no medical contraindications were noted that would preclude such assignment.

On November 24, 2008, Negron accessed sick call complaining of right rib pain. The objective assessment noted that Negron had possibly over-exercised his abdomen and was provided Ibuprofen. The record does not reflect that Negron made any other complaints of right flank pain between that time and April 16, 2009.

It would be expected that based on Negron's claims of being punched, kicked and slammed that there would be some sort of

objective physical manifestation of these actions. Based upon my review of the medical record in this case, the injury Negron may have incurred during the incident (an abrasion) is at most minimal and superficial. His complaint of initial right flank side soreness would be consistent with being forced to the floor after resisting handcuffing procedures. Absent Negron's initial complaint of side pain, objective medical evidence does not exist to support a claim of any serious injury.

I have reviewed Dr. Akhtar's medical examination as well as the subsequent examinations of Negron relevant to his complaints of side pain. Dr. Akhtar's assessment appears to me to be within the appropriate standards of medical care. From my review of Negron's Record of Health Care, I can find no objective medical evidence that would support his claims of any injury greater than the abrasion or initial right side soreness. The lack of any serious injury to his right side is supported by the medical examinations of May 29, 2008, July 9, 2008 and November 24, 2008 in which no injury was observed. Further, the fact that Negron refused the September 9, 2008 medical callout and was medically approved for the Restricted Labor Squad that month tends to support the conclusion he had no serious injury.

I have also reviewed the medical record concerning the May 9, 2008 Ibuprofen prescription. Once Dr. Akhtar became aware that the medication administration record (MARS) was not in the medical file, he rectified what appeared to be a support staff oversight and Negron received his prescription.

From my review of the medical record, it appears to me that Dr. Akhtar's medical decisions and actions were appropriate in this case. I can find no evidence that Dr. Akhtar

> was indifferent or even negligent in his
> treatment of Negron.

Def. Ex. J-J2 (paragraph enumeration omitted).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, No. 08-16795, 2010 WL 693629 (11th Cir. Mar. 2, 2010) (per curiam) (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard

of that risk; (3) by conduct that is more than mere negligence.")
(citation omitted).

> In <u>Estelle</u>[10], the Supreme Court
> established that "deliberate indifference"
> entails more than mere negligence. <u>Estelle</u>,
> 429 U.S. at 106, 97 S.Ct. 285; <u>Farmer</u>,[11] 511
> U.S. at 835, 114 S.Ct. 1970. The Supreme
> Court clarified the "deliberate indifference"
> standard in <u>Farmer</u> by holding that a prison
> official cannot be found deliberately
> indifferent under the Eighth Amendment "unless
> the official knows of and disregards an
> excessive risk to inmate health or safety; the
> official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference." <u>Farmer</u>, 511
> U.S. at 837, 114 S.Ct. 1970 (emphasis added).
> In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court
> explained in <u>McElligott</u>[12] that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>,[13] 221
> F.3d at 1258 (stating that defendant must have
> subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

<u>Farrow v. West</u>, 320 F.3d 1235, 1245-46 (11th Cir. 2003).

This Court finds that the Defendants have met their initial
burden of showing this Court that there are no genuine issues of
material fact that should be decided at trial (with respect to

---

[10] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

[11] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

[12] <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999).

[13] <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000).

Plaintiff's claim that the Defendants were deliberately indifferent to Plaintiff's serious medical needs). Plaintiff's medical records, the Affidavit of Dr. Frank Johanson and Defendants' affidavits demonstrate that Plaintiff did not have any serious medical needs after the incident of force on May 1, 2008.

Because the Defendants have met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial. Plaintiff has failed to provide any medical evidence to support his claim that he had a serious medical need at the time in question. In the Complaint and opposition to the summary judgment, while Plaintiff acknowledges that he received medical attention from Defendants Walters and Akhtar, he asserts that the Defendants' examinations were inadequate, that Akhtar should have ordered x-rays and that he should have received his pain medication earlier.

However, Akhtar "did not feel that x-rays were warranted" since he did not detect bruising or other indications of injury other than Negron's subjective expression of discomfort upon palpation. Def. Ex. I. And, it is evident that when Akhtar became aware that the medication administration record was not in the medical file, he rectified what was apparently "a support staff oversight" and Negron received his prescription for Ibuprofen. Def. Ex. J.

As noted previously, a medical need is considered to be serious if it is a condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. Here, Plaintiff has not provided any competent evidence to rebut the Defendants' evidence, which establishes that whatever injuries Plaintiff may have suffered were relatively minor and that even if left unattended his injuries did not pose a substantial risk of serious harm. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir.1994) ("delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.").

Defendants Walters and Akhtar conducted medical examinations of Negron after the use of force on May 1, 2008, at which it was concluded that Plaintiff did not have a serious medical need. Any claim of a serious injury or serious medical need is simply not supported by the medical records.

Even assuming arguendo that Plaintiff had a serious medical need, the Defendants did not have subjective knowledge of a risk of serious harm to Plaintiff. Both Defendants noted only minimal injuries, and entries in Plaintiff's medical records did not document any serious medical conditions. Further, Plaintiff saw

John Jones, a mental health specialist assigned to FSP, who met with Negron on May 2, 2008, for a post use of force psychological evaluation.  <u>See</u> Def. Exs. H; K2.[14]  In an affidavit, Jones avers that Negron "did not appear overly traumatized by the use of force."  Def. Ex. H.  None of the medical examinations uncovered evidence of a serious medical need.  Thus, there were no circumstances from which the Defendants could infer that Plaintiff had a serious medical need after the incident of force.  There is nothing to demonstrate that the Defendants had subjective knowledge that Negron was exposed to a substantial risk of serious harm based on his minimal injuries.  Accordingly, the Summary Judgment Motion will be granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs against the Defendants.

## H.   42 U.S.C. § 1997e(e)

Plaintiff Negron requests compensatory and punitive damages and "such other relief as it may appear the plaintiff is entitled."  Complaint at 19.  Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

---

[14] The entry of May 2, <u>2007</u>, in the mental health care records is incorrect.  <u>See</u> Def. Ex. K2.  The correct date of May 2, <u>2008</u>, is written on the chronological record of health care.  <u>See</u> Def. Ex. K2A.

emotional injury suffered while in custody without a prior showing

of physical injury."). <u>See</u> Summary Judgment Motion at 17-20.

> "In order to avoid dismissal under § 1997e(e),
> a prisoner's claims for emotional or mental
> injury must be accompanied by allegations of
> physical injuries that are greater than <u>de
> minimis</u>." <u>Mitchell v. Brown & Williamson
> Tobacco Corp.</u>, 294 F.3d 1309, 1312-13 (11th
> Cir. 2002) (citation omitted). We have
> previously held that a forced "dry shave" only
> amounted to a <u>de minimis</u> injury. <u>Harris v.
> Garner</u>, 190 F.3d 1279, 1286-87 (11th Cir.
> 1999), <u>vacated</u>, 197 F.3d 1059, <u>reinstated in
> relevant part</u>, 216 F.3d 970, 972 (11th Cir.
> 2000) (<u>en banc</u>); <u>see also</u> <u>Nolin v. Isbell</u>, 207
> F.3d 1253, 1258 n. 4 (11th Cir. 2000) (bruises
> received during an arrest were non-actionable
> <u>de minimis</u> injury). Even though § 1997e(e)
> bars damages for mental or emotional injury,
> it does not affect the availability of
> declaratory or injunctive relief. <u>See</u> <u>Harris</u>,
> 190 F.3d at 1288.

<u>Mann v. McNeil</u>, No. 09-10995, 2010 WL 26222, *1 (11th Cir. Jan. 6,

2010) (not selected for publication in the Federal Reporter).

This Court concludes that further factual development is

needed to determine whether Plaintiff's injuries were <u>de minimis</u>.[15]

Even if he sustained only <u>de minimis</u> injuries, construing

Plaintiff's Complaint liberally, Plaintiff would still be entitled

to nominal damages if he prevailed at trial. Thus, 42 U.S.C. §

1997e(e) does not provide a basis for dismissing this case at this

---

[15] Although the Court has previously found that Plaintiff's
injuries appeared relatively minor, that is not the same as <u>de
minimis</u>.

time.  Therefore, the Summary Judgment Motion will be denied as to

Plaintiff's request for compensatory and punitive damages.

## I. Qualified Immunity

Defendants contend that they are entitled to qualified

immunity.

> To receive qualified immunity, [a] public
> official must establish that he was engaged in
> a "discretionary function" at the time he
> committed the allegedly unlawful act.
> Holloman ex. rel. Holloman v. Harland, 370
> F.3d 1252, 1263-64 (11th Cir. 2004) . . . .
> If the official demonstrates that he was
> engaged in a discretionary function, the
> burden shifts to the plaintiff to prove that
> the official is not entitled to qualified
> immunity.  Cottone v. Jenne, 326 F.3d 1352,
> 1358 (11th Cir. 2003).  This requires
> plaintiff to satisfy the two-part test
> prescribed by the Supreme Court in Saucier v.
> Katz, 533 U.S. 194, 121 S.Ct. 2151, 150
> L.Ed.2d 272 (2001).  Under Saucier, a
> plaintiff must first show that the defendant
> violated a constitutional right and then
> demonstrate that the constitutional right was
> clearly established at the time of the alleged
> wrongful act.  533 U.S. at 201, 121 S.Ct. at
> 2156.  If a court, after viewing all the
> evidence in the light most favorable to the
> plaintiff and drawing all inferences in his
> favor, determines that the plaintiff has
> satisfied these two requirements, the
> defendant may not obtain qualified immunity.
> Holloman, 370 F.3d at 1264.

Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), cert.

denied, 78 U.S.L.W. 3375 (U.S. Feb. 22, 2010) (No. 09-743).

It is undisputed that the Defendants were engaged in

discretionary functions during the events in question.

Additionally, this Court has found that Defendants Bryant, Akhtar

and Walters did not violate Plaintiff's constitutional rights. Thus, Defendants Bryant, Akhtar and Walters are entitled to qualified immunity.

However, Defendant Williams' qualified immunity argument assumes that the facts are as alleged by him. Plaintiff has presented evidence that contradicts the assertions of Defendant Williams. Thus, this Court opines that there remain genuine issues of material fact as to whether Defendant Williams violated Plaintiff's clearly established constitutional rights. For this reason, he is not entitled to qualified immunity.

## J. Pendent State Law Claims

Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims related to the federal court action. Plaintiff raises the following state law claims: assault and battery; medical malpractice and medical negligence. Defendants contend that since Negron has failed to state a claim under the Eighth Amendment or First Amendment, then accordingly, the Court should decline to exercise supplemental jurisdiction over his state law claims. See Summary Judgment Motion at 22-23. Since Plaintiff's First Amendment claim (retaliation) and Eighth Amendment claims (excessive use of force and failure to intervene) survive the summary judgment stage and the state law claim of assault and battery arises from the same nucleus of operative facts as the Eighth Amendment claims, this

Court will exercise supplemental jurisdiction over that state law claim.  See Complaint at 9 (state law claim of assault and battery under Florida Statute § 768.28(9)(a)).  However, since Plaintiff's claims of deliberate indifference against Defendant Walters and Akhtar have not survived the summary judgment stage, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims of medical malpractice and medical negligence.

Therefore, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docs. #23, #34) is **DENIED** with respect to Plaintiff's Eighth Amendment claim for Thomas Williams' failure to intervene to prevent the alleged excessive use of force; **GRANTED** with respect to the conspiracy claims against Defendants Terri Walters and Thomas Williams; **DENIED** with respect to the retaliation claim against Defendant Williams; **GRANTED** as to Negron's seeking monetary damages from the Defendants in their official capacities; **GRANTED** as to the claims against Defendant Randall Bryant; **GRANTED** with respect to Plaintiff's Eighth Amendment claims of deliberate indifference to his serious medical needs against Defendants Muhammad Akhtar, Walters and Bryant; **DENIED** regarding Plaintiff's request for compensatory and punitive damages.  Any remaining portions of Defendants' Summary Judgment Motion are **DENIED.**

2.	Summary Judgment is **GRANTED** with respect to Defendants Randall Bryant, Terri Walters and Muhammad Akhtar, and judgment in their favor will be withheld pending adjudication of the action as a whole.  See Fed. R. Civ. P. 54.

3.	Defendant Young's Motion for Extension of Time to Respond to the Civil Rights Complaint and to Accept as Timely Filed (Doc. #44) is **GRANTED** to the extent that Defendants' counsel, within **FORTY (40) DAYS** from the date of this Order, shall notify the Court as to whether this case should be stayed as to Defendant Young until he returns from military leave.

4.	Defendant Williams shall file an answer to the Complaint within **TWENTY-EIGHT (28) DAYS** from the date of this Order.

5.	This case is referred to the assigned Magistrate Judge to conduct whatever settlement efforts are necessary.

**DONE AND ORDERED** at Jacksonville, Florida this 3rd day of March, 2010.


MARCIA MORALES HOWARD
United States District Judge


sc 3/3
c:
The Honorable Monte C. Richardson, U.S. Magistrate Judge
Luis Negron
Ass't Attorney General (Hiers)